**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ABC COMPANY, XYZ COMPANY, and NOAH DOE,<br><br>*Plaintiffs*,<br><br>v.<br><br>LAYERTWO LABS, INC., and JOHN DOE INVESTORS NOS. 1-99,<br><br>*Defendants*. | Case No. ______________________<br><br>**Declaration of Joseph Sremack** |

Pursuant to 28 U.S.C. § 1746, I, Joseph Sremack, hereby declare as follows:

1. I am a partner at Resolution Economics.

2. I have over twenty (20) years of experience in forensics, technology, data analytics, AI systems examination, and source code analysis for complex litigation, regulatory enforcement, and internal investigations. I hold a Master of Science in Computer Science from North Carolina State University and a Bachelor of Arts in Computer Science and Philosophy from The College of Wooster. I hold the following professional certifications: Certified Fraud Examiner (CFE), Certified Information Systems Auditor (CISA), and Certified Information Privacy Professional/United States (CIPP/US). I am the author of AI Forensics and Big Data Forensics and a frequent contributor to professional and academic organizations.

3. I have over two decades of experience in multiple countries, and have served as a consulting and testifying expert witness in hundreds of cases across United States state and federal courts, international courts, and proceedings before financial and trade regulatory bodies.

4. I am also recognized as one of the top data and technology experts by "Who's Who Legal."

5. My practice combines deep software examination with large-scale data analytics to provide objective, forensic analysis of complex technology. I use data science tools and techniques to extract and analyze data from virtually all major enterprise systems — including ERPs, cloud-based platforms, and proprietary databases — and routinely support class action and commercial litigation requiring the collection and analysis of tens of billions of records. I also develop custom software and analytical solutions, assess source code across numerous programming languages, and lead forensic examinations of artificial intelligence systems in both litigation and investigative settings.

6. I have advised on data privacy disputes and regulatory actions involving data transfers and tracking technology; patent and trade secret litigation involving proprietary information, including source code and customer data; geospatial, mobile, and social media data analysis for complex disputes; CFIUS examinations of software technology; and system configuration and controls assessments in securities and consumer litigation.

7. Over the course of my career, I have built and led forensic data analytics and technology practices at several of the nation's leading risk advisory and professional services firms, consistently establishing new capabilities in forensic analysis, source code analysis, AI examinations, and large-scale data investigations.

8. I was retained in this matter to verify the authenticity of email communications. I was provided administrative access to Salomon Brothers Strategic Advisors Inc. ("Salomon Brothers") Microsoft 365 email environment and performed a live examination of the email system, including the Exchange Online mailbox where the communications at issue were received.

9. As part of my examination, I reviewed the email messages on the live Microsoft 365 server, inspected the message metadata — including full message headers, transmission routing data, timestamps, sender and recipient information, and Message-ID fields — and confirmed that the emails are authentic and were not altered, fabricated, or inserted into the mailbox after the fact.

10. Specifically, I verified that the email headers contain consistent and sequential routing information from the originating mail servers through to Salomon Brothers' Microsoft 365 environment, that the timestamps are internally consistent, and that the messages reside in their expected mailbox locations with intact metadata. These characteristics are consistent with emails received in the ordinary course and inconsistent with messages that have been tampered with or fabricated.

11. Salomon Brothers received extortionate email threats directed at its client regarding digital wallets.

12. The first such threat was received on August 10, 2025, and demanded $1.5 million and threatened consequences if the sum was not received. Attached as **Exhibit 1** is a true and correct copy of those threats.

13. On August 10, 2025, that same day, Salomon Brothers received another threat again demanding $1.5 million. Attached as **Exhibit 2** is a true and correct copy of this email.

14. On February 10, 2026, Salomon Brothers received another threat demanding payment within 24 hours lest certain further actions be taken. Attached as **Exhibit 3** is a true and correct copy of that email.

15. I have compared the documents attached as Exhibits 1 through 3 to the corresponding messages as they exist on the live Microsoft 365 server and confirm they are true and correct copies.

16. In addition to the extortionate threats described above, ACME received over fifty (50) email messages from a single email account, each containing the identical message: "4 8 15 16 23 42". These messages were sent at varying times of day and were not received on a consecutive or daily basis.

17. The first such message was received on July 14, 2025, and the messages continued through February 25, 2026. I reviewed these messages on the live Microsoft 365 server and confirmed, through the same header and metadata analysis described above, that they are authentic and were received in the ordinary course.

18. Separately, beginning on July 29, 2026, Salomon Brothers began receiving a series of email messages purporting to be automated document-signature notifications. As of August 14, 2026, Salomon Brothers had received at least twenty-five (25) such messages, on most days during that period and on certain days multiple times per day. Two were received on August 14, 2026, at 9:37 a.m. and 11:13 a.m.

19. Each message displays a sender name beginning "eDoc-Shared®_552_System_NA3-eDoc&Auth-activity_type" and a subject line in the form "Salomonbrothers Completed: Agreement Confirmation, Pending eSign: Review On Docx_[document identifier], [date]." The body states that a completed document is ready to review, directs the recipient to "REVIEW THE DOCUMENTS," represents that the document may be viewed only by chris@salomonbrothers.co, and states "Thank you for choosing DocuSign." Each message includes an attachment named "Chris Doc.svg" of approximately 445 bytes.

20. Salomon Brothers does not own or operate the domain salomonbrothers.co. Salomon Brothers' email domain is salomonbros.com. The domain salomonbrothers.co is a separate domain that visually resembles the Salomon Brothers name but is not associated with Salomon Brothers' Microsoft 365 environment or with any Salomon Brothers email account. Accordingly, these messages did not originate from Salomon Brothers, and the appearance of a "salomonbrothers" sender address does not reflect any access to or compromise of Salomon Brothers' mail systems.

21. Applying the same header and metadata analysis described above, I confirmed that these messages as they reside in the mailbox are authentic records of what Salomon Brothers received and were received in the ordinary course. Attached as **Exhibit 4** is a true and correct copy of representative messages from this series. I have compared Exhibit 4 to the corresponding messages as they exist on the live Microsoft 365 server and confirm that it is a true and correct copy.

Dated: August 17, 2026

Joseph Sremack