**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ABC COMPANY, XYZ COMPANY, and NOAH DOE,<br><br>Plaintiffs,<br><br>v.<br><br>LAYERTWO LABS, INC., BLOCKCHAIN EMULATION SERVICES LTD., PAUL SZTORC, and JOHN DOE INVESTORS NOS. 1-99,<br><br>Defendants. | ) | Case No. 3:26-cv-01342 |

**DEFENDANT LAYERTWO LABS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED PSEUDONYMOUSLY AND MOTION TO SEAL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 3

I. PLAINTIFFS' ANONYMITY WOULD CREATE AN UNFAIRLY ONE-SIDED PROCEEDING AND PREJUDICE LAYERTWO LABS. ..... 3

II. PLAINTIFFS' EVIDENCE ESTABLISHES A GENERAL SECURITY RISK, BUT NOT A SUFFICIENTLY PARTICULARIZED BASIS FOR ANONYMITY ..... 6

III. PLAINTIFFS' PROPOSED SEALING ORDER WOULD IMPROPERLY EXTEND SECRECY THROUGHOUT THE LITIGATION ..... 10

CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Doe v. Barr*,
479 F. Supp. 3d 20 (S.D.N.Y. 2020) ..... 5

*Doe v. Del Rio*,
241 F.R.D. 154 (S.D.N.Y. 2006) ..... 5, 6

*Doe v. Delta Airlines, Inc.*,
310 F.R.D. 222 (S.D.N.Y. 2015) ..... 6

*Doe v. Skyline Automobiles Inc.*,
375 F. Supp. 3d 401 (S.D.N.Y. 2019) ..... 10

*Doe v. Weinstein*,
484 F. Supp. 3d 90 (S.D.N.Y. 2020) ..... 10

*Doe v. Wesleyan Univ.*,
No. 3:19-CV-01519 (JBA), 2020 WL 13564635 (D. Conn. Sept. 15, 2020) ..... 4, 5, 10

*Glob. Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006) ..... 2

*Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110 (2d Cir. 2006) ..... 11

*Mirlis v. Greer*,
952 F.3d 51 (2d Cir. 2020) ..... 11

*One Standard of Just., Inc. v. City of Bristol*,
No. 3:22-CV-00863 (SVN), 2022 WL 17688053 (D. Conn. Dec. 9, 2022) ..... 5

*Sealed Plaintiff v. Sealed Defendant*,
537 F.3d 185 (2d Cir. 2008) ..... 4

*SEC v. Shavers*,
No. 4:13-CV-416, 2014 WL 4652121 (E.D. Tex. Sept. 18, 2014) ..... 7

**Statutes**

N.Y. Pers. Prop. Law §§ 251–258 ..... 2

**Other Authorities**

Fed. R. Civ. P. 10(a) ..... 3, 8, 10

## PRELIMINARY STATEMENT

Defendant LayerTwo Labs, Inc. ("LayerTwo Labs") respectfully submits this memorandum in opposition to Plaintiffs' Motion to Proceed Pseudonymously and Motion to Seal, ECF No. 3 (the "Motion").

Plaintiffs ask to bring this public lawsuit while concealing their own identities and publicly identifying the party they have sued. That asymmetry is particularly striking because Plaintiffs' own Complaint places the parties in precisely the type of cryptocurrency dispute they claim makes public identification dangerous. Plaintiffs have publicly identified LayerTwo Labs and its principal while alleging a dispute over valuable digital assets, yet ask the Court to shield themselves from public identification based on the risk that doing so could make them targets.

Plaintiffs' evidence establishes that certain cryptocurrency holders can face serious security threats, including physical attacks, designed to obtain access to or steal their cryptocurrency. But Plaintiffs make no comparable showing that they have faced, or are likely to face, such threats. More importantly, Plaintiffs' own allegations undermine the application of that rationale here. Plaintiffs do not claim to possess the private keys necessary to access or transfer the Bitcoin at issue. Plaintiffs therefore have not explained why disclosure of their identities would expose them to the type of attack they describe, which is directed at persons who possess or control cryptocurrency and can be coerced into surrendering it.

Plaintiffs' identities are also not incidental to their claims. Their theory depends on their alleged discovery of the Subject Addresses, their efforts to establish that the addresses were abandoned, and their asserted acquisition of ownership. The identity and conduct of the persons asserting those claims are therefore not wholly incidental to the dispute.

Finally, Plaintiffs seek a sealing order that would extend beyond their identities and require LayerTwo Labs to redact and seal information that merely "tends to identify" Plaintiffs, their

members, or their families throughout the litigation. Plaintiffs have not shown why such a sweeping restriction is necessary.

Plaintiffs should not be permitted to publicly identify the defendant and its principal while concealing themselves from the public, particularly where they have not shown the particularized harm necessary to justify that departure from ordinary practice. The Motion should be denied.

## BACKGROUND

Plaintiffs bring this action concerning dormant Bitcoin addresses that they claim were abandoned and that they purportedly acquired ownership of through procedures under Article 7-B of the New York Personal Property Law. *See* Plaintiffs' First Amended Complaint, ECF No. 40 ("FAC") ¶ 2. They contend that their alleged ownership of those addresses entitles them to ECX, a separate digital asset distributed by reference to Bitcoin holdings. *Id.* ¶¶ 1, 6.

Plaintiffs' claimed ownership of the Subject Addresses is also the subject of a separate quiet-title action that they filed in the Supreme Court of the State of New York, County of New York, Index No. 153119/2026 (the "New York Action"). FAC ¶ 60. The allegations concerning the nature of the wallets and Plaintiffs' efforts to establish ownership are set out in Plaintiffs' First Amended Complaint in that action. A true and accurate copy of Plaintiffs' First Amended Complaint in that action (the "New York Compl.") is attached as Exhibit A.[1]

Plaintiffs do not allege that they possess the private keys associated with the Subject Addresses. Instead, they allege that Noah Doe located the digital addresses, or "public keys," of

[1] The Court may take judicial notice of the First Amended Complaint for Declaratory Relief that Plaintiffs filed in the New York County Supreme Court action, attached as Exhibit A. A court may take judicial notice of a document filed in another court, to establish the fact of such litigation and related filings and to determine what those filings state. *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). LayerTwo Labs relies on the New York Complaint solely for Plaintiffs' own allegations concerning the nature of the wallets and the Subject Addresses, not for the truth of those allegations.

certain digital wallets and deposited that information with the New York City Police Department on a USB drive. New York Compl. ¶ 32. Thereafter, in February 2025, Noah Doe engaged Salomon Brothers Strategic Advisors Inc. ("Salomon Brothers") as a strategic consultant to assist in developing a plan to reach owners of the "Found Wallets," provide notice regarding the alleged abandonment of those wallets, and identify wallets that may have been incorrectly grouped with the "Found Wallets." *Id.* ¶ 35. Plaintiffs allege that, in June 2025, they authorized messages to be sent to owners of the "Found Wallets" and for Salomon Brothers to host a webpage containing the abandonment notice. *Id.* ¶¶ 37–38. From June 30 through July 10, 2025, OP_RETURN messages were sent to the "Found Wallets" directing holders to that webpage. *Id.* ¶ 37. Plaintiffs allege that the webpage was hosted by Salomon Brothers. *Id.* ¶ 38.

Plaintiffs allege that, on August 2, 2025, Noah Doe authorized Salomon Brothers to issue a global press release concerning the abandonment notice. *Id.* ¶ 39. According to the New York Complaint, the release was issued on August 7 and was published or reported on by more than 820 media outlets in 37 countries. *Id.* Plaintiffs allege that the resulting coverage reached millions of people. *Id.* They further allege that Galaxy Digital circulated a report concerning the abandonment notice to its clients and the public. *Id.* ¶ 40.

Plaintiffs now seek to proceed under the pseudonyms "ABC Company," "XYZ Company," and "Noah Doe." ECF No. 2-1 at 1. They also ask the Court to seal their true identities and to require any party filing papers in this action to redact and file under seal any information that "tends to identify" Plaintiffs, their members, or their families. *Id.* at 2.

## ARGUMENT

### I. PLAINTIFFS' ANONYMITY WOULD CREATE AN UNFAIRLY ONE-SIDED PROCEEDING AND PREJUDICE LAYERTWO LABS.

Federal Rule of Civil Procedure 10(a) requires that "[t]he title of a complaint must name

all the parties." Although courts may permit a party to proceed pseudonymously in appropriate circumstances, anonymity is not available merely because a plaintiff prefers confidentiality or fears generalized harm. The Second Circuit has instructed that courts must balance the plaintiff's interest in anonymity against the public interest in open judicial proceedings and the prejudice that anonymity may impose on the opposing party. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–90 (2d Cir. 2008).

In balancing those interests, courts consider a variety of factors including:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the plaintiff or, even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of any such prejudice differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose her identity; (9) whether there is an atypically weak public interest in knowing this litigant's identity due to the purely legal nature of issues presented or otherwise; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Doe v. Wesleyan Univ.*, No. 3:19-CV-01519 (JBA), 2020 WL 13564635, at *3 (D. Conn. Sept. 15, 2020). No one factor is dispositive in determining whether to allow a plaintiff to proceed under a pseudonym. *Id.*

Those considerations weigh against anonymity here. Plaintiffs' identities are relevant to the very claims they have chosen to bring. Plaintiffs' theory depends on the alleged history of the Subject Addresses, their purported discovery of those addresses, their efforts to establish

abandonment, and the circumstances under which they claim title.

This is not a case in which the plaintiff's identity is incidental to a legal challenge or otherwise irrelevant to the issues before the Court. Plaintiffs' claims are fact-intensive and depend on their account of how they identified, obtained, and came to claim ownership of the Subject Addresses. That consideration weighs against anonymity. *See id.* at *5 ("Litigation that involves a fact-intensive inquiry rather than an abstract challenge to public policy weighs in favor of requiring a party to disclose its identity."). The public interest here is heightened, not merely ordinary. Plaintiffs invoke a novel abandoned-property theory to claim ownership of dormant Bitcoin across tens of thousands of addresses and then rely on that asserted Bitcoin ownership to advance the further novel theory that they are entitled to the ECX associated with those addresses. The public, including others who may be affected by these theories, therefore has a substantial interest in knowing who seeks to establish such rights and obtain such relief.

The interests Plaintiffs invoke are also materially different from the highly personal interests that have traditionally supported pseudonymity. Courts have permitted anonymity in matters "of a sensitive and highly personal nature," *Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006), such as intimate medical, sexual, or immigration matters. Plaintiffs, by contrast, seek to conceal their status as claimants to valuable digital assets, a commercial and financial interest. Plaintiffs' own authorities are not to the contrary. Each involved a concrete, individualized threat of a kind absent here. *See One Standard of Just., Inc. v. City of Bristol*, No. 3:22-CV-00863 (SVN), 2022 WL 17688053, at *3 (D. Conn. Dec. 9, 2022) (risk of retaliation against an identified person and his children based on his status as a sex offender); *Doe v. Barr*, 479 F. Supp. 3d 20, 26 (S.D.N.Y. 2020) (risk of harm against an individual if he returns to Haiti based on his HIV status, mental illness, and sexual orientation).

The resulting prejudice is not limited to LayerTwo Labs' ability to investigate Plaintiffs' identities. The public nature of the proceeding itself matters. Courts have recognized that allowing one side to remain anonymous while the opposing party is publicly identified can create an unfair asymmetry and impede the public's ability to evaluate the parties and their claims. See *Doe v. Del Rio*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006) ("Where the defendants' identities are known, but not the plaintiffs', information about only one side may thus come to light."); *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 224–25 (S.D.N.Y. 2015) (recognizing "a significant interest in open judicial proceedings even in ordinary civil litigation between private parties," particularly where individual defendants are sued "with regard to particular actions and incidents" rather than "abstract challenges to public policies") (quoting *Del Rio*, 241 F.R.D. at 159).

The asymmetry is particularly pronounced here. Plaintiffs' Complaint publicly identifies LayerTwo Labs and its principal place of business, as well as its CEO and co-founder. Plaintiffs, meanwhile, seek to conceal their own identities and to prevent public disclosure of information that might identify them. The result would be a proceeding in which Plaintiffs may publicly accuse an identified defendant while the public is denied the identity of the parties making those accusations.

Disclosure of Plaintiffs' identities to LayerTwo Labs under seal would not eliminate that public-fairness concern. Nor would the fact that LayerTwo Labs can litigate without knowing Plaintiffs' identities eliminate the asymmetry created by allowing Plaintiffs to remain anonymous while LayerTwo Labs is publicly identified.

## II. PLAINTIFFS' EVIDENCE ESTABLISHES A GENERAL SECURITY RISK, BUT NOT A SUFFICIENTLY PARTICULARIZED BASIS FOR ANONYMITY

Plaintiffs' evidence establishes, at most, that cryptocurrency-related disputes can generate angry communications and financial demands. It does not establish the particularized risk of

physical harm that Plaintiffs invoke to justify concealing their identities.

As a threshold matter, the physical-harm rationale cannot apply to two of the three Plaintiffs. ABC Company and XYZ Company are limited liability companies. FAC ¶¶ 7–8. An entity cannot be kidnapped, assaulted, or subjected to the "wrench attacks" and home invasions that purportedly underlie Plaintiffs' safety concerns. That rationale therefore does not itself establish a basis for concealing the identities of the corporate Plaintiffs. Any such physical-security concern must instead be tied to an identifiable individual, here Noah Doe.

Plaintiffs' own allegations undermine the principal security rationale they advance. Plaintiffs do not allege that they possess the private keys for the Subject Addresses. Instead, their New York pleading alleges that Noah Doe located the digital addresses or "public keys" of certain wallets and deposited that information with the NYPD. New York Compl. ¶ 32. Plaintiffs further allege that withdrawing cryptocurrency is impossible without the corresponding private key. *Id.* ¶ 23(b); *See also SEC v. Shavers*, No. 4:13-CV-416, 2014 WL 4652121, at *1 (E.D. Tex. Sept. 18, 2014) (recognizing "[w]hoever has the private key for a bitcoin address controls the bitcoins held at that address"). Their asserted ownership therefore rests not on possession or control of the Bitcoin, but on their theory that the Bitcoin was abandoned and that title vested through New York's found-property procedures.

That distinction matters. Plaintiffs' generalized evidence concerning "wrench attacks" is premised on criminals using violence or threats of violence to obtain private keys or force victims to transfer cryptocurrency. *See* Declaration of Christian Ladner ("Ladner Decl.") ¶¶ 10, 18. But Plaintiffs have not explained how that mechanism applies to persons who, by their own account, do not possess the private keys necessary to access or transfer the Bitcoin at issue. Nor have Plaintiffs identified evidence that disclosure of their identities would materially increase the risk

of the types of attacks they describe.

Plaintiffs' reliance on cyberattacks that do not require possession of private keys, such as spear-phishing, social engineering, and impersonation schemes, fares no better. That theory rests on generalized risk, not any particularized threat to these Plaintiffs. Ladner opines only on the risks faced by substantial cryptocurrency holders as a class; he offers no assessment of any risk specific to these Plaintiffs. Ladner Decl. ¶¶ 21–22. Nor do Plaintiffs explain why disclosure of their names in this action, as distinct from their association with the Subject Addresses that Plaintiffs themselves publicized through a global notice campaign reaching more than 820 media outlets, New York Compl. ¶ 39, would materially increase any such risk. Every named civil litigant faces some baseline risk of online fraud. If that generalized possibility were sufficient, Rule 10(a)'s presumption of disclosure would effectively disappear in any case involving a cryptocurrency participant.

The particularized evidence Plaintiffs submit fares no better. Plaintiffs describe the Salomon Brothers incident as a firm "targeted specifically for cyber ransom because of its relationship with the Plaintiffs." Pls.' Mem. at 7. But Plaintiffs' own pleading provides important context: Salomon Brothers was engaged to assist Plaintiffs in contacting purported owners of the Found Wallets and notifying them that Plaintiffs considered the wallets abandoned. New York Compl. ¶ 35. Plaintiffs further allege that Salomon Brothers hosted the abandonment notice to which those wallet owners were directed and provided a mechanism through which they could respond and assert ownership. *Id.* ¶¶ 37–38. The communications Plaintiffs now characterize as evidence of a security threat thus arose in the context of Plaintiffs' own outreach concerning the alleged abandonment of those wallets.

And the evidence does not support Plaintiffs' characterization of what occurred. The

Declaration of Joseph Sremack ("Sremack Decl.") states only that Salomon Brothers received emails "directed at its client" concerning digital wallets. Sremack Decl. ¶ 11. It does not state that Salomon Brothers was targeted because of its relationship with Plaintiffs, and it does not describe a cyberattack or ransomware incident. To the contrary, Sremack's analysis found no compromise of Salomon Brothers' email systems. *Id.* at 5. The attached communications contain demands for money or disclosure and assertions of ownership concerning the underlying Bitcoin, not threats of physical violence or kidnapping. *See id.* ¶¶ 11–14 & Exs. 1–3.

Nor does the evidence show that these senders were attempting to identify or locate Plaintiffs. The $1.5 million demand, for example, was directed to Salomon Brothers, not to Plaintiffs. Sremack Decl. Ex. 1 at 2. The other communications likewise concern the alleged effort to claim or reassign dormant Bitcoin addresses, including assertions by purported owners that the Bitcoin was not abandoned. *See id.*, Exs. 2–4. For example, one of the allegedly threatening messages reads "hey [expletive] off on trying to take our coins because the wallets are dormant!!! you have my coin address in there – they are on physical collectables – i am not peeling the coin to sign a transaction – you cannot simply claim the bitcoin! the owner is the one with the private key!" In context, these communications reflect disputes over Plaintiffs' assertion that the wallets had been abandoned and demands concerning the underlying assets. They do not establish a campaign to identify Plaintiffs or a concrete risk that disclosure of their identities would expose them to the physical harm Plaintiffs describe.

Plaintiffs' showing also suffers from a basic evidentiary deficiency: no Plaintiff has submitted a declaration attesting to any threat directed at them. Instead, the asserted fear is presented secondhand through counsel. The Lin Declaration relays only what "Plaintiffs have informed me" about their generalized concerns, Lin Decl. ¶¶ 3–4, while the Ladner Declaration

addresses risks faced by cryptocurrency holders as a class without assessing these Plaintiffs specifically. Plaintiffs also rely on unauthenticated media accounts describing crimes against unrelated persons. A generalized and uncorroborated projection of harm, untethered to any particularized threat against these Plaintiffs, cannot carry their burden. See *Doe v. Weinstein*, 484 F. Supp. 3d 90, 95–96 (S.D.N.Y. 2020) (general allegation of potential harm, without corroboration, is "mere speculation" insufficient to support pseudonymity).

This case therefore differs materially from cases in which courts have found the requisite risk based on specific and concrete evidence. *See, e.g., Doe v. Wesleyan Univ.*, No. 3:19-CV-01519 (JBA), 2020 WL 13564635, at *4, *6 (D. Conn. Sept. 15, 2020) (relying on "specific and concrete evidence" and finding a risk "significant and substantially likely to occur"). Plaintiffs have offered no comparable evidence connecting disclosure of their identities in this litigation to a significant and substantially likely risk of physical harm. General evidence that cryptocurrency holders can be targets of crime is not enough. See *Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 406–07 (S.D.N.Y. 2019) ("Plaintiff simply projects generalized harm, and more is required for her to satisfy her burden.").

Plaintiffs therefore have not shown the particularized security risk necessary to overcome Rule 10(a)'s presumption of disclosure. The Motion should be denied.

## III. PLAINTIFFS' PROPOSED SEALING ORDER WOULD IMPROPERLY EXTEND SECRECY THROUGHOUT THE LITIGATION

Plaintiffs seek relief that extends well beyond permitting them to use pseudonyms in the caption. They ask the Court to seal their true identities and to require any party, including LayerTwo Labs, to redact and file under seal any information that "tends to identify" Plaintiffs, their members, or their families. ECF No. 2-1 at 2.

That request would impose an ongoing and potentially open-ended obligation throughout

the litigation. It would apply not only to the identities themselves, but to information that might indirectly identify Plaintiffs in discovery, motion practice, evidentiary submissions, and other filings. Plaintiffs have not shown why such a broad prospective restriction is necessary.

Courts must narrowly tailor sealing orders to the interests that justify restricting public access. *See Mirlis v. Greer*, 952 F.3d 51, 59–61 (2d Cir. 2020) (setting out the three-step inquiry that governs any restriction on public access to judicial documents); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (documents may be sealed only where "specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest"). Plaintiffs' proposed order does not do so. It would require LayerTwo Labs and the Court to determine, throughout the litigation, whether particular information "tends to identify" Plaintiffs or their families, without identifying specific categories of information that require protection.

The requested order would also compound the asymmetry created by pseudonymity. Plaintiffs would remain anonymous while LayerTwo Labs would bear the burden of ensuring that its filings do not disclose information that might identify them. That burden would be particularly difficult to administer in a fact-intensive case involving the history of particular Bitcoin addresses and Plaintiffs' alleged efforts to establish ownership.

The availability of less-restrictive alternatives further demonstrates why Plaintiffs' sweeping request is unnecessary. Courts consider whether alternative measures can protect a party's confidentiality, and here they plainly can. A Standing Protective Order is already in place. *See* Standing Protective Order (Aug. 19, 2026), ECF No. 8. That order, together with the use of initials or targeted sealing of any discrete, genuinely sensitive information, can address any legitimate confidentiality concern without concealing Plaintiffs' identities from the public

altogether. This is therefore not a case in which anonymity is necessary because no lesser measure would suffice.

If genuinely sensitive information arises, the Court can address that information through targeted redactions or narrowly tailored sealing requests. Plaintiffs have not established a basis for the sweeping prospective order they seek.

## CONCLUSION

For the reasons set forth above, the Motion should therefore be denied in its entirety.

Dated: September 11, 2026

Respectfully submitted,

**BROWN RUDNICK LLP**

*/s/ Kyle P. Dorso*

Kyle P. Dorso (*pro hac vice)*
Franca L. DeRosa (07836)
185 Asylum Street
Hartford, CT 06103
(860) 509-6500
(860) 509-6501
kdorso@brownrudnick.com
fderosa@brownrudnick.com

Stephen D. Palley (*pro hac vice)*
601 Thirteenth Street NW Suite 600
Washington, DC 20005
(202) 536-1700 (telephone)
(617) 289-0466 (facsimile)
spalley@brownrudnick.com

Johanna Fay (*pro hac vice)*
One Financial Center
Boston, MA 02111
(617) 856-8200 (telephone)
(617) 289-0899 (facsimile)
jfay@brownrudnick.com

Dylan P. Kletter (28197)
7 Times Square
New York, NY 10036
(212) 209-4800
(212)-209-4801
dkletter@brownrudnick.com

*Counsel for LayerTwo Labs*

**CERTIFICATE OF SERVICE**

I certify that on September 11, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all parties of record.

*/s/ Kyle P. Dorso*